**Yolanda SURO, as mother and natural guardian of David Suro, infant, and Yolanda Suro, individually, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

No. 95–CV–4778.

United States District Court, E.D. New York.

Aug. 1, 2000.

Edward Seth Goodman, Simonson Hess & Leibowitz P.C., New York City, for plaintiff.

Nancy A. Miller, U.S. Attorney's Office, Brooklyn, NY, for defendant.

### ORDER

GERSHON, District Judge.

Plaintiffs, Yolanda Suro and her infant son David, bring this action pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671–80, to recover for injuries that David allegedly sustained as a result of ingesting lead paint. Plaintiffs claim that David's lead paint exposure occurred while he was living in a Brooklyn apartment building that was owned by the defendant United States of America as a result of a civil forfeiture. Defendant moved to dismiss the complaint under Rule 12(b)(1) of the Federal Rules of Civil Procedure on the ground that the Court lacked subject matter jurisdiction. I referred the motion to United States Magistrate Judge Steven M. Gold, and, on November 23, 1999, after a full evidentiary hearing, Judge Gold issued a Report and Recommendation, recommending that I dismiss the case. My review is *de novo*. *See* 28 U.S.C. 636(b)(1); Fed.R.Civ.P. 72(b). Plaintiffs have also separately moved before me for leave to amend their complaint to add CAISI Management Corporation ("CAISI") as a party.

**Defendant's Motion to Dismiss**

Plaintiffs have not challenged Judge Gold's finding that the United States cannot be held liable under the FTCA based on the alleged negligence of CAISI, the company that the government hired to manage the property where David allegedly ingested lead paint. As Judge Gold thoroughly explained, the FTCA waives the sovereign immunity of the United States with respect to torts committed by government employees, not its independent contractors. *See* 28 U.S.C. § 1346(b) (authorizing suits against United States for injuries "caused by the negligent or wrongful act or omission of any employee of the Government"); § 2671 (excluding employees of "any contractor with the United States" from definition of "Employee of the Government"). Judge Gold found that CAISI was acting as an independent contractor when it managed the building where David Suro lived and, as a result, recommended that the government's motion to dismiss be granted to the extent that plaintiffs' claims are based on the alleged negligence of CAISI. This unopposed portion of Judge Gold's Report and Recommendation is hereby adopted.

The only issue in dispute is whether plaintiffs' claim that the government itself was independently negligent justifies the exercise of jurisdiction under the FTCA. The evidence presented at the hearing before Judge Gold shows that at some point during its ownership of the building, the defendant learned that a child six years of age or under was living on the premises. Deputy United States Marshal Craig M. Donlon testified that, when he went to the building to deliver a letter to one of the tenants, a woman opened the apartment door, and a child, who appeared to be about two years old, was standing beside her. There was no evidence that Marshal Donlon made any inquiries about the two year old, that he told CAISI there was a two year old child on the premises or that he took any other action to alert CAISI that, because a child was living in the building, it should investigate whether there was a hazardous lead paint condition that needed to be repaired.

According to the testimony presented at the hearing, the United States Marshal Service did notify CAISI on other occasions when it discovered that there were problems on the premises that needed to be repaired. *See* Oct. 1, 1999 Tr. of Jur. Hrg. at 34, 36, 72, 86, 114. For example, when a United States Marshal learned that the lights in the building were not working, he reported the situation to CAISI, which, in turn, hired an electrical subcontractor. *See id.* at 118–19. Indeed, although the tenants were instructed to direct any complaints in the first instance to CAISI, the Marshal Service also assured the tenants that "as a last resort they should call us and we'd try to resolve whatever the problem was." *Id.* at 61.

 Whether or not Marshal Donlon's failure to notify CAISI he had seen a child on the premises constitutes negligence is a question of New York law. *See* 28 U.S.C. § 1346(b)(1) (liability is to be determined "in accordance with the law of the place where the act or omission occurred"); § 2674 (United States shall be liable for tort claims "to the same extent as a private individual under like circumstances"). Under New York law, the owner of a multiple dwelling owes a duty to persons on the premises to maintain the building in a reasonably safe condition. *See* N.Y.Mult.Dwell.Law § 78. As part of this duty of care, the Administrative Code of the City of New York specifically requires an owner of a multiple dwelling to "remove or cover" any paint containing specified levels of lead in any dwelling unit in which a child of six years of age or under resides. *See* Admin.Code of City of N.Y. § 27–2013[h][1] ("Local Law 1"). Local Law 1 does not impose liability without fault, and a landlord can avoid liability by demonstrating that, even though it violated Local Law 1, it acted reasonably under the circumstances. *See Juarez v. Wavecrest Mgmt. Team Ltd.,* 88 N.Y.2d 628, 644, 649 N.Y.S.2d 115, 672 N.E.2d 135 (1996).

Local Law 1 further establishes a presumption that, in any multiple dwelling built prior to January 1, 1960, peeling paint that is found in an apartment occupied by a child six years of age or younger contains hazardous levels of lead. As a result, Local Law 1 implicitly gives a landlord the authority to enter a dwelling unit in which a child six years of age or younger resides for the specific purpose of inspecting for and repairing a lead paint defect. *See* Admin.Code of City of N.Y. § 27–2008; *Juarez,* 88 N.Y.2d at 647, 649 N.Y.S.2d 115, 672 N.E.2d 135. This right of entry, in turn, gives a landlord constructive notice of a lead paint hazard if the landlord knows that a child age six or under lives in the dwelling unit. *See Juarez,* 88 N.Y.2d at 647, 649 N.Y.S.2d 115, 672 N.E.2d 135.

Under New York law, the duty of a multiple dwelling owner to maintain its premises in a reasonably safe condition is "non-delegable," which means that a person injured on the premises may pursue a claim against the owner even if it arises solely out of the acts or omissions of its independent contractor. *See Mas v. Two Bridges Assocs.,* 75 N.Y.2d 680, 687, 555 N.Y.S.2d 669, 554 N.E.2d 1257 (1990) ("a party injured by the owner's failure to fulfill [the duty to maintain the premises] may recover from the owner even though the responsibility for maintenance has been transferred to another"). Because the FTCA expressly excludes this type of vicarious liability from its waiver of sovereign immunity, the government asserts that this state law cannot be applied to the United States. Thus, the government argues that it delegated its duty to maintain the premises in a reasonably safe condition to CAISI and that only CAISI can be liable for any breach of that duty.

I agree with Judge Gold that the United States was authorized to delegate its general duty to maintain the premises to CAISI. Because it did delegate that duty, I also agree that the government cannot be held liable for CAISI's alleged failure to remove lead paint. It does not follow, however, that once the government made

its delegation, it stood in the same position with respect to the property as any disinterested passerby. The cases upon which the government relies for this position do not go that far. To the contrary, these cases merely emphasize that, in order to hold the United States liable under the FTCA, a plaintiff must be able to point to a direct act of negligence by a government employee; claims based solely on theories of non-delegable duties or strict liability must be dismissed. *See, e.g., Roditis v. United States*, 122 F.3d 108, 112 (2d Cir. 1997) ("where the United States is wholly without fault, the federal government may not be held liable for a negligent or wrongful act or omission of an independent contractor even where state law would impose liability in such instances"); *Moreno v. United States*, 965 F.Supp. 521, 525–26 (S.D.N.Y.1997) (non-delegable duty could not be used to impose liability on the government under the FTCA where the only negligence had been committed by its independent contractor); *Williams v. United States*, 50 F.3d 299, 308 (4th Cir. 1995) (state law non-delegable duty could not be used to impute acts or omissions of independent contractor to United States).

Here, plaintiffs' allegations can be read to claim liability that is based, not on a non-delegable duty to maintain the premises or on the theory that the government should be vicariously liable for the acts or omissions of its contractor, but rather on direct acts of negligence on the part of the government, namely its failure to notify CAISI of the presence of an infant child at the premises.[1] This distinction as to type of liability is recognized under New York law. *See Rogers v. Dorchester Assocs.*, 32 N.Y.2d 553, 562, 347 N.Y.S.2d 22, 300 N.E.2d 403 (1973) (distinguishing case where owner's liability is based solely upon

breach of non-delegable duty from one in which owner's liability is based on its actual notice of defect and its failure to notify independent contractor). *See also Miller v. George Arpin & Sons, Inc.*, 949 F.Supp. 961, 966–67 (D.R.I.1997) (while recognizing that United States could not be found liable merely by virtue of its status as property owner, court found that it had subject matter jurisdiction over plaintiff's claims that government employees created and/or had notice of hazardous condition on premises). Even in *Williams*, a case heavily relied upon by the government, the Fourth Circuit, in holding that there was no subject matter jurisdiction, emphasized that the United States had reminded its contractor on several occasions to repair a hazardous condition. *See Williams*, 50 F.3d at 302, 310. Here, in contrast, the government's omission constitutes an allegation of direct negligence on the part of the United States and, thus, provides a sufficient basis for the exercise of subject matter jurisdiction. Accordingly, defendant's motion to dismiss for lack of subject matter jurisdiction is denied.

**Plaintiffs' Motion for Leave to Amend**

Although Fed.R.Civ.P. 15(a) provides that a court shall freely grant leave to amend "when justice so requires," a court has the discretion to deny leave to amend "where the motion is made after an inordinate delay, no satisfactory explanation is offered for the delay, and the amendment would prejudice the defendant." *See Cresswell v. Sullivan & Cromwell*, 922 F.2d 60, 72 (2d Cir.1990). Plaintiffs have not satisfactorily explained why they waited until this late date to bring CAISI into the case, several years after the litigation was commenced and with

---

1. Plaintiffs did not fully articulate this narrow ground as the basis for their claim of independent negligence until oral argument before me. In the proceedings before Judge Gold, plaintiffs emphasized that the government exercised responsibility for maintaining the premises concurrently with CAISI and that it failed to discharge that responsibility with reasonable care by failing to remove the lead paint. I agree with Judge Gold that the government delegated the duty to manage and maintain the premises to CAISI in its entirety and that, under such facts, a finding of independent negligence cannot be premised upon a theory of concurrent responsibility.

**210**

discover nearly completed. Plaintiffs have long had notice of a potential claim against CAISI. Indeed, the very purpose of many of the proceedings to date was to adjudicate the relationship between CAISI and the defendant so that I could determine whether the government could be held liable for CAISI's alleged negligence.

In their letter motion dated April 7, 2000, plaintiffs state only that "it is in the infant's best interest to have CAISI bound by the same court as the U.S.A." The letter implies that my finding in this case that CAISI was acting as an independent contractor, and not an agent or employee of the government, could be of use to plaintiffs in a subsequently-filed state action against CAISI. However, in order to bind CAISI on that or any other issue, I would have to re-open discovery and give CAISI a full and fair opportunity to litigate. This would unduly prejudice the United States and cause substantial and unnecessary delay in a case that already has been litigated for almost five years. Thus, considering plaintiffs' inordinate delay in bringing this motion, their failure to provide a satisfactory explanation for that delay, and the prejudice to defendant, plaintiffs' motion for leave to amend is denied.

The parties are directed to promptly conclude pretrial proceedings under the supervision of Judge Gold.

**SO ORDERED.**