**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Plaintiff,**

v.

**CPT MEDICAL SERVICES, P.C., Hoss Medical Services, P.C., Huseyin Tuncel, M.D., Bozena Augustyniak, M.D., Michael Aziz, M.D., Anne Brutus, M.D., Irina Kimyagarova, M.D., Victor Mariani, M.D., Ahmad Riaz, M.D., Mark Slamowitz, D.C., Sako Tarakhchyan, D.C., Defendants.**

No. 04 CV 5045(ILG).

United States District Court, E.D. New York.

Oct. 5, 2007.

Jay Shapiro, Michael Francis Gallagher, Scott A. Resnik, Alexis Lauren Cirel, Katten Muchin Rosenman LLP, New York, NY, for Plaintiff.

Bruce S. Rosenberg, Bellmore, NY, Bruce S. Rosenberg, Lifshutz & Lifshutz P.C., New York, NY, for Defendants CPT Medical Services, P.C., Hoss Medical Services, P.C., Huseyin Tuncel, M.D., Mark Slamowitz, D.C., and Material Witness Andrew Susi, M.D.

Matthew J. Conroy, Belesi & Donovan, P.C., Garden City, NY, for Defendants Bozena Augustyniak, M.D. and Top Choice Medical, P.C.

Harold J. Levy, Quadrino & Schwartz, P.C., Garden City, NY, for Defendants Michael Aziz, M.D. and Anne Brutus, M.D.

Jude Roberto Cardenas, Cardenas & Associates, New York, NY, for Defendant Irina Kimyagarova, M.D.

William E. Betz, Port Washington, NY, Paul Stuart Haberman, Lifshutz & Lifshutz P.C., New York, NY, for Defendant Victor Mariani, M.D.

Benjamin M. Pinczewski, Law Offices of Benjamin M. Pinczewski, P.C., Brooklyn, NY, for Defendant Ahmad Riaz, M.D.

Lawrence A. Kushnick, Kushnick & Associates, P.C., Melville, NY, for Defendants Richard Lee, Michael Dante Management Inc., and MultiMedical Management, Inc.

## MEMORANDUM AND ORDER

I. LEO GLASSER, Senior District Judge.

### INTRODUCTION

Plaintiff State Farm Mutual Automobile Insurance Company ("State Farm" or "Plaintiff") moves for leave to amend its complaint pursuant to Federal Rule of Civil Procedure 15(a), seeking to join additional defendants and claims for relief. In its original complaint, Plaintiff, a nationwide automobile insurer, alleged that certain medical corporations submitted fraudulent charges for medically unnecessary tests rendered for diagnostic purposes, and the doctors who owned these medical corporations conspired with other doctors to gain access to patients and to certify that the tests were medically necessary when they were not. Plaintiff seeks to broaden the scope of the complaint by adding thirty-eight new defendants who allegedly conspired with the original defendants to perpetrate fraud against Plaintiff by violating New York's No–Fault laws, N.Y. Ins. Law § 5101 *et seq.*, and the regulations promulgated pursuant to those laws, 11 N.Y.C.R.R. § 65 *et seq.* (collectively, the "No–Fault Laws"). This Court grants Plaintiff's motion for the reasons explained below.

### BACKGROUND

Pursuant to the No–Fault Laws, Plaintiff is required to provide benefits to insured persons for medically necessary diagnostic tests, and such benefits may be assigned by the insured persons to their medical providers for payment. In dispute are the reliability and medical necessity of current perception threshold tests ("CPT tests") which the defendants utilized to diagnose automobile accident patients and then submitted claims for payment to Plaintiff. In both the original and amended complaints, Plaintiff seeks damages for violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1962(c), (d), common law fraud, and unjust enrichment for claims already paid out by Plaintiff, as well as declaratory judgment pursuant to 28 U.S.C. § 2201 against any defendant that continues to submit fraudulent claims to Plaintiff.

In the original complaint, the defendants fell into three categories: (1) doctors (the "Prescribing Doctors") who treated insured patients at clinics in New York for soft tissue injuries related to automobile accidents and ordered CPT tests knowing that these diagnostic tests were not medically necessary; (2) Dr. Huseyin Tuncel, who performed the CPT tests and interpreted them for the Prescribing Doctors knowing that the tests were not medically necessary; and (3) professional medical corporations owned and controlled by Dr. Tuncel through which he charged Plaintiff for the CPT tests. In addition to possessing knowledge that the tests they were performing had no diagnostic value, Plaintiff also claims that the defendants submitted claims to Plaintiff using billing codes that materially misrepresented the nature of the tests performed, and submitted materially misleading and false documents in support of the tests. The linchpin of Plaintiff's original allegations is that the defendants conspired to abuse the No–Fault laws and obtain payment for services and diagnostic tests which were not medically necessary.

In the proposed amended complaint, Plaintiff adds thirty-six new defendants and multiple new claims. First, Plaintiff alleges that the professional medical corporations were "secretly owned and controlled by laypersons" who used management companies to exercise control over the medical corporations. The owners conspired with and directed the Prescribing Doctors to refer patients to outside providers for CPT testing and to draft letters of medical necessity to support

the tests' purported value even though the Prescribing Doctors knew that the tests had no medical value. Patient referrals were then sold to the CPT test providers in exchange for kickback payments. *See* Pl. Br. at 2–3. Second, Plaintiff asserts that the owners fraudulently incorporated under the No–Fault Laws to defraud Plaintiff. Therefore, the medical corporations were not entitled to reimbursement for the services they provided because they were not owned by doctors as required pursuant to New York law. *See State Farm Mut. Auto. Ins. Co. v. Mallela*, 4 N.Y.3d 313, 320–21, 794 N.Y.S.2d 700, 827 N.E.2d 758 (2005).

Defendants[1] oppose Plaintiff's motion for leave to amend, arguing that: (1) there has been undue delay by Plaintiff in filing its motion to amend; (2) Defendants would be unduly prejudiced because the amended complaint makes the action more complex and burdensome; (3) Defendants would be prejudiced because significant discovery has already transpired; and (4) any amendment would be futile because Plaintiff's claims are barred by the statute of limitations.[2]

## DISCUSSION

### A. Standard of Review

Where responsive pleadings in an action have been filed, a plaintiff may seek to amend his complaint only by leave of court. *See* Fed.R.Civ.P. 15(a). Federal Rule of Civil Procedure 15(a) ("Rule 15") provides that leave to amend "shall be freely given when justice so requires." Fed.R.Civ.P. 15. Federal Rule of Civil Procedure 21 provides that parties may be dropped or added by order of the court. *See* Fed.R.Civ.P. 21. It is "generally accepted . . . that no material difference exists between the standards articulated by Rules 15(a) and 21, and, as such, where parties satisfy the requirements under Rule 15(a) for leave to amend, they will generally be permitted to add parties under Rule 21." *Sanrio Co. v. Epic Trading, Inc.*, No.2004–5428(NG)(MDG), 2005 WL 1705746, at *1 (E.D.N.Y. July 21, 2005) (quotation and alteration omitted).

Amendments made pursuant to Rule 15(a) should be "freely granted when justice so requires" in order to accomplish the underlying purpose of the Rule, which is "to provide maximum opportunity for each claim to be decided on its merits rather than on procedural technicalities." *Alpha Lyracom Space Commc'ns, Inc. v. Commc'ns Satellite Corp.*, No. 89 Civ. 5021(JFK), 1994 WL 256671, at *2 (S.D.N.Y. June 7, 1994); *see Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962) ("If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits."). The Supreme Court has mandated that

> [i]n the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc.—the leave sought should, as the rules require, be "freely given."

*Foman*, 371 U.S. at 182, 83 S.Ct. 227; *see also Tokio Marine & Fire Ins. Co. v. Employers Ins. of Wausau*, 786 F.2d 101, 103

---

1. Only defendants Bozena Augustyniak, M.D., Mark Slamowitz, D.C., Huseyin Tuncel, M.D., CPT Medical, and Hoss Medical (collectively, "Defendants") opposed Plaintiff's motion. Though unclear, it appears that proposed new defendants Richard Weinstein, Medical Management Corp., and Weinstein Healthcare Management Inc. (collectively, the "Weinstein Defendants") joined in the oppositions. However, the Weinstein Defendants do not have standing to oppose the motion for leave to amend because they are not yet named parties to this action. *See Vasquez v. Summit Women's Ctr., Inc.*, 301 CV 955(PCD), 2001 WL 34150397, at *1 n. 1 (D.Conn. Nov. 16, 2001) ("The standing of non-parties to challenge a motion for leave to file an amended complaint that seeks to add them is, at best, dubious.").

2. Defendants also argue that they would be prejudiced because witnesses have become unavailable and that amendment would be futile because Plaintiff does not have standing to assert the claims in the amended complaint. Because Defendants have made only conclusory statements with regard to these two arguments without any support, the Court will not consider them.

(2d Cir.1986). A district court should "exercise its Rule 15(a) discretion liberally to permit amendment of pleadings, except where the rule's salutary objective of encouraging disposition of litigation on the merits is outweighed by equally compelling policy considerations." *Sanders v. Thrall Car Mfg. Co.,* 582 F.Supp. 945, 952 (S.D.N.Y.1983); *see also Zenith Radio Corp. v. Hazeltine Research, Inc.,* 401 U.S. 321, 330, 91 S.Ct. 795, 28 L.Ed.2d 77 (1971) (decision whether to permit or disallow amendment is within the district court's discretion). Refusal to grant leave without justification is "inconsistent with the spirit of the Federal Rules." *Foman,* 371 U.S. at 182, 83 S.Ct. 227.

### B. Undue Delay

▓▓▓ Plaintiff filed the original complaint on November 19, 2004, and waited over two-and-a-half years to file the proposed amendments. Prejudice against defendants tends to increase with delay in filing an amended complaint. *Saxholm AS v. Dynal, Inc.,* 938 F.Supp. 120, 123 (E.D.N.Y.1996) (collecting cases). However, mere delay alone does not permit a district court to deny amendment. *Block v. First Blood Assocs.,* 988 F.2d 344, 350 (2d Cir.1993). Where, as here, "a considerable period of time has passed between the filing of the complaint and the motion to amend, courts have placed the burden upon the movant to show some valid reason for his neglect and delay." *Sanders,* 582 F.Supp. at 952 (quotation and internal quotes omitted).

Plaintiff advances several reasons for the delay. First, Plaintiff submits that "[i]t was only after filing the complaint and conducting discovery that State Farm appreciated the scope and methods of the scheme at issue and could identify all of the persons and entities responsible for its execution." Pl. Reply Br. at 13. It contends that most of the discovery to date has been devoted to compiling a more complete list of defendants for its amended complaint, and that both Magistrate Judge Matsumoto and the defendants to the original complaint were aware of this fact. Second, Plaintiff argues that the delay in discovering this information was due in part to the noncompliance of defendants in responding to discovery requests. Though the deadline for the amended complaint was first calendared for September 11, 2006, Plaintiff avers that it was forced to ask Judge Matsumoto for multiple extensions of this deadline because some defendants were delinquent in their discovery responses, did not produce appropriate witnesses for deposition, and ongoing settlement discussions with new defendants were unsuccessful.

After searching the docket history of this case, the Court finds that Plaintiff has proffered persuasive reasons for its delay. Magistrate Judge Matsumoto issued multiple orders regarding noncompliance with discovery requests, and threatened sanctions on several occasions. To the extent some of the defendants' actions impacted the deadline for amending the complaint, the Court regards the resulting delay as reasonable. Moreover, Defendants were well aware of Plaintiff's intent to amend the complaint, as well as the substance of those amendments, at least as early as January, 2007. Therefore, Defendants cannot claim that they were without notice of the new allegations or that the delay would be "undue." [3]

---

**3.** In a factually and procedurally analogous case, State Farm sued retail and wholesale suppliers of medical equipment and their corporate owners. *See State Farm Mut. Auto. Ins. Co. v. Grafman,* 04 CV 2609(NG)(SMG), slip op. (E.D.N.Y. May 22, 2007). The original complaint alleged, *inter alia,* that the supplies were not medically necessary, the claims submitted included material misrepresentations as to the medical necessity of the supplies, and the wholesale and retail defendants conspired to exploit the No–Fault laws in order to defraud State Farm. In the proposed amended complaint, submitted two-and-a-half years after the original filing, State Farm sought to add seventy new defendants and twenty-six new claims, alleging, *inter alia,* that certain defendants induced licensed doctors to open medical clinics which would be secretly owned by lay persons and controlled in violation of New York law. The retail defendants would then receive kickbacks to compensate them for paying inflated prices for supplies so that inflated invoices could be submitted to State Farm for reimbursement. The court found that the amendments would not cause any prejudice from undue delay in light of the fact that discovery proceeded slowly due to the noncompliance of defendants in answering discovery requests, that discovery was still in the early stages and no trial date had yet been set, and that defendants were aware that plaintiff intended to file an amended complaint and were *on notice of the substance of those*

That the foundation for the amendments was laid during discovery is also a valid reason for the prolonged delay. *See Am. Med. Assoc. v. United Healthcare Corp.,* No. 00 Civ. 2800(LMM), 2006 WL 3833440, at *4 (S.D.N.Y. Dec. 29, 2006) (granting leave to amend where "the basis for Plaintiffs' Proposed Amendments was formed, at least in part, during Stage One discovery and ... this [is] a satisfactory explanation for the [two-and-a-half-year] delay in the filing of the Proposed Amendments."); *Banco Cent. Del Para. v. Para. Humanitarian Found., Inc.,* No. 01 Civ. 9649(JFK)(FM), 2003 WL 21543543, at *4 (S.D.N.Y. July 8, 2003) (granting leave to add defendants after almost two years where their roles in conspiracy and conversion were discovered through deposition testimony); *Xpressions Footwear Corp. v. Peters,* Nos. 94 Civ. 6136(JGK), 95 Civ. 8242(JSM), 95 Civ. 8243(JSM), 1995 WL 758761, at *2 (S.D.N.Y. Dec. 22, 1995) ("[F]ederal courts consistently grant motions to amend where it appears that new facts and allegations were developed during discovery, are closely related to the original claim, and are foreshadowed in earlier pleadings."). Therefore, Plaintiff has offered the Court satisfactory reasons to explain its delay.[4]

amendments for several months prior to the motion for leave to amend.

4. The cases cited by Defendants for the proposition that amendment would cause undue delay are all procedurally distinguishable. *See, e.g., Suro v. United States,* 107 F.Supp.2d 206, 210 (E.D.N.Y.2000) (denying leave to amend where case had been pending for five years, discovery was nearly complete, and the plaintiffs had notice of the new defendant they sought to add long before they moved to amend); *Amaker v. Haponik,* 198 F.R.D. 386, 390 (S.D.N.Y.2000) (denying motion to amend complaint to add claims involving new incidents and twenty new defendants because "plaintiff filed th[e] motion shortly before the deadlines for completing discovery and submitting pretrial motions were set to expire."); *Commercial Agropequaria Menichetti Fuente S.A.C.I. v. Heather Trading,* No. 85 Civ. 3240(RWS), 1986 WL 3780, at *2–3 (S.D.N.Y. Mar. 27, 1986) (granting leave to amend, adding additional claims and new defendant, based on facts unearthed during deposition discovery despite fact that discovery had been "substantially completed," but denying the addition of a different defendant and other claims because plaintiff could not make out claim for tortious interfer-

## C. Prejudice

The party opposing the motion for leave to amend carries the burden of demonstrating that it will be substantially prejudiced by the amendments. *Care Envtl. Corp. v. M2 Techs. Inc.,* 05 CV 1600(CPS), 2006 WL 2265036, at *6 (E.D.N.Y. Aug. 8, 2006); *Saxholm AS,* 938 F.Supp. at 123. Any prejudice demonstrated "must be balanced against the court's interest in litigating all claims in a single action and any prejudice to the movant which would result from a denial of the motion." *Saxholm AS,* 938 F.Supp. at 123.

To determine whether the proposed amendments will constitute prejudice, courts in this Circuit "consider whether the assertion of the new claim would: (i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction." *Block,* 988 F.2d at 350. Prejudice is generally found where the motion to amend "comes on the eve of trial after many months or years of pre-trial activity; the amendment would cause undue delay in the final disposition of the case; the amendment brings en-

ence as to this defendant and new RICO charges would create new issues for discovery); *Alpha Lyracom Space Commc'ns Inc.,* 1994 WL 256671, at *2 (denying amendment where the motion was "inexcusably delayed" because the "Plaintiffs ... had the names of several, if not most, of the newly proposed defendants as early as the First Amended Complaint" filed five years earlier, and all newly proposed defendants were located in foreign countries, which would make additional discovery costly and time consuming); *Sanders,* 582 F.Supp. at 951–53 (denying motion to amend complaint for the third time in two-and-a-half years to add new RICO cause of action where plaintiff did not plead cause of action in first instance due to ignorance of the statute); *Cooper v. Lubell,* No. 83 Civ. 2506(JFK), 1987 WL 14468, at *2–3 (S.D.N.Y. July 13, 1987) (denying motion to amend complaint for the second time where new claims for mental and emotional damages would change defendants' potential exposure in professional malpractice case pending for four years because the suit originally threatened only defendants' partnership assets, and plaintiffs were aware of the damages prior to the commencement of discovery and "fail[ed] to advance a reason for the long delay in seeking ... amendment").

tirely new and separate claims, adds new parties or at least entails more than an alternate claim or a change in the allegations of a complaint." *Care Envtl. Corp.*, 2006 WL 2265036, at *6.

■ Defendants argue that the first and second *Block* factors apply here because allowing an amendment to add additional defendants and claims will require the expenditure of additional resources, require additional discovery, and delay the resolution of this matter. This is not the case. The burden of conducting additional discovery does not automatically constitute undue prejudice. *See United States v. Cont'l Ill. Nat. Bank and Trust Co. of Chi.*, 889 F.2d 1248, 1255 (2d Cir.1989) ("The adverse party's burden of undertaking [additional] discovery, standing alone, does not suffice to warrant denial of a motion to amend a pleading."); *Unique Sports Generation, Inc. v. LGH–III, LLC*, No. 03 Civ. 8324(JGK)(DF), 2005 WL 2414452, at *12 (S.D.N.Y. Sept. 30, 2005) ("Allegations that an amendment will require the expenditure of additional time, effort, or money do not constitute undue prejudice." (quoting *A.V. by Versace, Inc. v. Gianni Versace, S.p.A.*, 87 F.Supp.2d 281, 299 (S.D.N.Y.2000))). Nor would the complexity of the litigation be a reason for denying the motion. As the *Grafman* court noted, "[t]his court is no stranger to multi-defendant, complex RICO actions." Slip op. at 25 (collecting cases).

Defendants will not suffer undue prejudice from the late timing of the amendments because the case is nowhere near resolution. The only discovery that has been completed was conducted in an effort to determine the proper parties to this action, and significant discovery on the merits has yet to commence. *See* Def. Br. at 5 ("The pleadings and discovery conducted to date have been based on the validity of CPT testing and the financial

arrangement between the CPT Testing companies and the referring physicians.").[5] Moreover, no scheduling order or deadline for filing motions to amend the complaint has expired, nor has a trial date been set. *See Am. Med. Assoc.*, 2006 WL 3833440, at *6.

The Court also finds that allowing Plaintiff to add claims for fraudulent incorporation would not significantly delay the resolution of this matter. Here, "the new claims are merely variations on the original theme ..., arising from the same set of operative facts as the original complaint." *Hanlin v. Mitchelson*, 794 F.2d 834, 841 (2d Cir.1986). The fraudulent incorporation claims will not "dramatically change the nature of the case" because the issue of fraudulent incorporation is intertwined with Plaintiff's RICO conspiracy and common law fraud claims. *Am. Med. Assoc.*, 2006 WL 3833440, at *7. Indeed, all claims at issue share a common theme: the intent of Defendants to exploit the No–Fault laws to the detriment of Plaintiff.

Furthermore, the Court has a substantial interest in adjudicating the entire dispute in one action. If a separate action were brought against the new defendants, it would require the parties and the court to duplicate their efforts. If at the trial against Defendants it is shown that the CPT tests were not medically necessary, as the Plaintiff has alleged, and the Prescribing Doctors deny that they acted with fraudulent intent, then it will become necessary for Plaintiff to offer evidence concerning the fraudulent incorporation of the medical clinics under Federal Rule of Evidence 404(b). Therefore, if leave to amend were denied, plaintiff would be required to submit almost identical proof regarding the relationships between defendants and the ownership structure of the clinics in the second action. *See Grafman*, slip op. at 31 n. 18. Plaintiff "should not be put to the burden of prosecuting two separate cases with identical factual predicates." *Id.* at 28. Thus, amendment would buttress judicial economy.

---

5. The new defendants named to this action will also not suffer undue prejudice because they are being added at a relatively early stage where discovery has focused on determining their identities and roles in the scheme. *See Banco*, 2003 WL 21543543, at *4 (explaining that "the new defendants will likely find that much of the discovery they might seek has already been satisfac-

torily completed. In any event, even if either the Principal Defendants or the new defendants require additional discovery, 'the adverse party's burden of undertaking discovery, standing alone, does not suffice to warrant denial of a motion to amend a pleading.' " (quoting *Cont'l Ill. Nat. Bank*, 889 F.2d at 1255) (internal citation omitted)).

Given the "absence of any appreciable delay or any other hardship which cannot be alleviated by appropriate discovery orders," Defendants have not demonstrated that they will be prejudiced to such a degree as to require this Court to deny the motion. *Saxholm AS*, 938 F.Supp. at 124.

### D. Futility

 A proposed amendment to a pleading would be futile if it could not withstand a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6))."[6] *Martin v. Dickson*, 100 Fed. Appx. 14, 16 (2d Cir.2004). Courts should not dismiss complaints for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief, and it should not deny leave to file a proposed amended complaint unless that same rigorous standard is met." *Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 123 (2d Cir.1991) (quotation omitted).

Defendants argue that the proposed amended complaint would be futile because Plaintiff's RICO claims are barred by the four-year statute of limitations. Defendants claim that, aside from one proposed new defendant, no claims were submitted for reimbursement by Defendants after November, 2002. In response, Plaintiff argues that any new claims impacting the original named defendants concern the identical conduct at issue in the original complaint, and that they should therefore relate back to the filing date in November, 2004, for purposes of the statute of limitations. *See* Fed.R.Civ.P. 15(c)(2) ("[A]n amendment of a pleading relates back to the date of the original pleading when . . . the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth . . . in the original pleading. . . ."). Plaintiff also asserts that the RICO claims would not be barred as to the new defendants because Plaintiff was unaware until recently of the link between the new defendants' conduct and the fraudulent activity, and thus the statute of limitations could not accrue until the Plaintiff discovered this link.[7]

 The Court finds that it is premature to determine whether a statute of limitations defense would be applicable to the claims asserted in Plaintiff's pleadings. While the statute of limitations for civil RICO claims is four years, the limitations period is not triggered until "the plaintiff discovers or should have discovered the RICO injury." *In re Merrill Lynch Ltd. P'ships Litig.*, 154 F.3d 56, 58 (2d Cir.1998). Defendants have not presented evidence that Plaintiff knew or should have known of the conspiracy between the defendants named in the original complaint and the newly named defendants prior to discovery. As the court in *Grafman* explained, where a plaintiff contends that it may be able to recover damages if "(a) the allegations in the [amended complaint] relate back to the original complaint, (b) equitable tolling applies, or (c) plaintiff was not able to discover the injury despite reasonable inquiry until a later date," then "fact-sensitive questions" concerning whether allegations in a proposed amended complaint are timely "should not be resolved against plaintiff at [the early discovery] stage of the proceedings." Slip op. at 24. Because similar issues are involved in this case, the Court will await proper factual development from the parties on a motion for summary judgment or dismissal to determine whether the statute of limitations has expired on all or some of Plaintiff's claims.

### CONCLUSION

For the foregoing reasons, Plaintiff's motion to amend is GRANTED.

SO ORDERED.

---

**6.** Accordingly, pursuant to Rule 12(b)(6) the "allegations of the pleading in question must be presumed true, and the Court must draw all reasonable inferences in the pleading party's favor." *Unique Sports Generation, Inc.*, 2005 WL 2414452, at *5 (citing *Walker v. City of N.Y.*, 974 F.2d 293, 298 (2d Cir.1992)).

**7.** Plaintiff also argues that Defendants lack standing to assert a statute of limitations defense on behalf of any defendants that will be joined in the action following amendment.