*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 13a0081p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

DONNETTA BERRIEN, Individually and as
surviving spouse of Clarence Berrien II,
*Plaintiff-Appellee*,

v.

UNITED STATES OF AMERICA,
*Defendant-Appellant*.

No. 12-1365

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 2:08-cv-13359—Victoria A. Roberts, District Judge.

Argued: January 16, 2013

Decided and Filed:  March 28, 2013

Before:  BOGGS, ROGERS, and STRANCH, Circuit Judges.

_____

**COUNSEL**

**ARGUED:** Lowell V. Sturgill, Jr., UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellant.  Liisa R. Speaker, SPEAKER LAW FIRM, PLLC, Lansing, Michigan, for Appellee.  **ON BRIEF:** Lowell V. Sturgill, Jr., Thomas M. Bondy, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellant.  Liisa R. Speaker, SPEAKER LAW FIRM, PLLC, Lansing, Michigan, Barry J. Goodman, GOODMAN ACKER PC, Southfield, Michigan, for Appellee.

_____

**OPINION**

_____

ROGERS, Circuit Judge.  Plaintiff's decedent worked for a civilian contractor at a military base in Michigan.  He was fatally injured by a gutter that fell from the liquor store on the base.  The United States appeals from the district court's award under the Federal Tort Claims Act of $1.18 million in damages for failure to warn.  Because

1

the Act does not waive the immunity of the United States for acts of independent contractors, liability could only be based on the negligence of government employees. There is no evidence that government employees actually knew of the dangerous condition of the liquor store, however, so that—under applicable Michigan law—any liability for failure to warn an invitee of a dangerous condition would have to have been based on a negligent failure to discover the dangerous condition. To the extent that the district court found that any government official, as opposed to an employee of an independent contractor, should have known of the dangerous condition, such a finding was clearly erroneous. The district court accordingly should have denied relief under the Federal Tort Claims Act.

Clarence Berrien died while working for TECOM, a contractor hired to conduct maintenance, inspection, and repair activity at the U.S. Army Garrison on Selfridge Air National Guard Base near Mt. Clemens, Michigan. One of the buildings on the base was the Class VI liquor store. The store was designed by Wilson/Jenkins, a contractor, and constructed between 1992 and 1993 by the Bell Company, another contractor. The store's construction was supervised by Marshall Waters Woody, also an independent contractor. Marshall Waters Woody assumed full responsibility for inspecting the Class VI store during its construction as part of its contract.

After the store was constructed and turned over to the Army, the Army immediately incorporated it into its general maintenance contract with Raytheon Technical Services. That contract was in effect between 1998 and 2004. From 2004 to 2008, TECOM Inc./All-Star (TECOM) held the general maintenance contract. TECOM's contract required it to perform all maintenance for all buildings and structures on the base. TECOM was tasked with performing all preventive and recurring maintenance tasks, including a maintenance inspection on the Class VI store every 120 days. The contract required TECOM to inspect and repair all gutters on the buildings at Selfridge. The contract also required that TECOM "[p]ost safety posters, displays, caution, danger and warning signs and devices in conspicuous places on the interior and exterior of shops, plants, facilities, and public buildings." The United States

agreed to undertake "periodic spot reviews" to ensure TECOM's compliance with the contract.

On June 28, 2006, Berrien started work between 6:00 and 7:00 a.m. At some point during the morning, while working alone in an area behind the Class VI store, Berrien was injured, suffering blunt trauma to the head. There were no witnesses to the accident. He was discovered lying unconscious near his eight-foot step ladder and a metal rain gutter that was attached to a 2x4 piece of wood. Experts later determined that the gutter fell from the Class VI store because the gutter was improperly fastened to the store with non-weather-resistant screws and without corrosion-resistant fasteners, the piece of wood attached to the gutter was improperly flashed, and the gutter was not supported by proper gutter straps. *See Berrien v. United States*, No. 08-13359, 2012 U.S. Dist. LEXIS 4251, at *7-8 (E.D. Mich. Jan. 13, 2012). The gutter apparently fell and struck Berrien in the head; he then fell to the ground, hitting his head a second time. He received emergency medical treatment and was taken to the hospital, but he never regained consciousness. He died a week later. After Berrien's death, his wife, Donnetta Berrien, received a lump-sum payment of $100,000 in pension benefits from his union, and has been collecting $692.75 in weekly worker's compensation benefits.

In federal district court, Donnetta Berrien filed a claim under the Federal Tort Claims Act (FTCA), 28 U.S.C. § 1346(b)(1), for wrongful death on behalf of Clarence Berrien's estate and for loss of consortium on her own behalf and that of their eighteen children. The original complaint alleged that the United States was negligent for failing to properly and timely inspect, repair, and maintain the gutter, and for "[f]ailing to warn business invitees on the premises such as Mr. Berrien . . . that [the gutters] were not secure and because of this fact posed a severe risk of harm or injury." The district court granted the Government's motion to dismiss with respect to the allegedly negligent design and construction; because the Class VI store was designed and constructed by contractors, the independent contractor exception barred an FTCA claim. *See* 28 U.S.C. § 2671. The court also dismissed the complaint with respect to any negligence in failing

to inspect, maintain, and repair the gutter system because TECOM, as contractor, was responsible for those duties.

However, the district court did not dismiss Berrien's failure-to-warn claim. After discovery, the district court denied cross-motions for summary judgment and the matter proceeded to a bench trial. The parties waived the right to present live testimony, and the district court ruled on the basis of depositions, exhibits, affidavits, and documents exchanged during discovery. The court issued findings of fact and conclusions of law, granted judgment in Berrien's favor, and awarded $1,181,611 in damages.

The district court found that the gutter fell and hit Clarence Berrien in the head, knocking him down and causing him serious and ultimately fatal injuries. The court found that the gutter had been improperly fastened to the building and that the gutter had not been properly supported. The court held the United States liable for Berrien's death, concluding that neither the contractor exception nor the discretionary function exception to FTCA liability applied and that Berrien's claim succeeded on the merits under Michigan law.

The district court held that the contractor exception did not apply because the United States is not shielded from liability if the duty that it attempted to delegate to a contractor is nondelegable. The court also held that the United States is not protected by the contractor exception when it knows that the contractor created a dangerous condition on its property. The court found that because the United States had constructive knowledge of the dangerous condition that led to Berrien's death, the contractor exception did not preclude liability. The district court held that the discretionary function exception, 28 U.S.C. § 2680(a), did not apply because the United States had no choice other than to comply with local building codes, as required by 40 U.S.C. § 3312(b). The court also concluded that the decision to follow building codes is not a political, social, or economic judgment unique to the government's function, making the discretionary function exception inapplicable.

On the merits, the district court held that Berrien established the four elements of a negligent-failure-to-warn claim under Michigan law: duty, breach, causation, and

damages. The court held that the United States had constructive knowledge of the gutter defect because the condition had existed for at least fourteen years, giving the United States "ample time to become aware of it." *Berrien*, 2012 U.S. Dist. LEXIS 4251, at *17. The court found that the United States owed a duty of reasonable care to Clarence Berrien, an invitee on its premises, and breached that duty when it failed to warn him about a dangerous condition of which it had constructive knowledge. The United States now appeals.

On the facts of this case, FTCA liability is foreclosed. The FTCA authorizes:

> [C]ivil actions on claims against the United States, for money damages . . . for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1). For Berrien to recover money damages, her claim must be based on a negligent act or omission by a government employee. No intentional tort has been alleged, and there is no strict liability against the United States under the FTCA. *Laird v. Nelms*, 406 U.S. 797, 802–03 (1972). There must therefore be a finding of negligence of a government employee to permit FTCA recovery. Liability in this case must be based on such negligence either in (1) design and construction of the liquor store, (2) failing to warn of a known hazard, or (3) failing to discover the hazard. For varying reasons, the United States is not liable on any of these negligence theories.

Negligent design or construction cannot provide a basis for FTCA liability in this case because such a claim is barred by the contractor exception. Although Berrien initially claimed that the negligent construction of the Class VI store provided a basis for liability, the district court dismissed the negligent construction claims. *Berrien*, 2009 U.S. Dist. LEXIS 83952, at *12. In doing so, the district court correctly reasoned that a claim of negligent construction cannot provide the basis for FTCA liability in this case. The liquor store was designed and constructed by contractors working under the supervision of other contractors. The FTCA waives the United States' sovereign

immunity for damages resulting from injuries caused by the negligent acts or omissions of "any employee of the Government" acting within the scope of the employee's duties. 28 U.S.C. § 1346(b)(1). "Employee of the government" includes "officers or employees of any federal agency," and "federal agency" expressly "does not include any contractor with the United States." 28 U.S.C. § 2671. This provision is referred to as the contractor exception. The contractor exception precludes FTCA liability for any negligence in construction by any of the contractors who designed and constructed the store. Berrien does not seriously contest this conclusion, although some of her arguments regarding the nondiscretionary nature of certain design and construction standards would appear to be relevant only to a challenge to the design or construction of the liquor store building.

The failure-to-warn claim, on which the district court did award damages, fails as well. To the extent that the negligent failure to warn is attributed to TECOM, the contractor exception would bar FTCA liability. To the extent the failure is attributed to the United States, the claim fails on the merits.

Michigan's nondelegable duty doctrine cannot render the United States liable for TECOM's negligence; imposing such liability would permit state law to abrogate the FTCA's contractor exception. Although the United States delegated safety inspection duties to TECOM by contract, Berrien's argument that the United States retained a nondelegable duty to inspect and ensure the safety of the premises effectively suggests that the United States must be the guarantor of duties it has attempted to delegate. The Supreme Court has, however, specifically rejected the evisceration of the FTCA contractor exception by means of a state nondelegable-duty argument, reasoning that while common law principles of tort and agency can be used to define "contractor" for FTCA purposes, Congress did not intend for the courts to use state-law or common-law principles to "abrogate the exemption that the Act provides." *Logue v. United States*, 412 U.S. 521, 528 (1973). Similarly, in *Hall v. United States*, No. 97-1344, 1998 U.S. App. LEXIS 10762 (6th Cir. May 27, 1998), we rejected the argument "that the government ha[s] a mandatory and non-delegable duty to insure a safe work

environment," concluding that "[t]he law is clear that the government may delegate its safety responsibilities to independent contractors in the absence of federal laws or policies restricting it from doing so." *Id.* at *10 (quoting *Andrews v. United States*, 121 F.3d 1430, 1440 (11th Cir. 1997)). Berrien does not argue that any federal laws or policies expressly prevented the government from delegating its safety responsibilities in this case; she argues instead that under Michigan law, the duty to warn is nondelegable. However, state-law concepts of nondelegable duty cannot be applied in the FTCA context to undermine the contractor exception. In *Tyson v. Department of Veterans Affairs*, 279 F. App'x 334, 335 (6th Cir. 2008), we affirmed the judgment of the district court "on the basis of its opinions," which held:

> Plaintiff argues that . . . [the United States] had a non-delegable duty to provide certain services to Plaintiff and that [the United States] can be held liable for breaching that duty. . . . [A]cceptance of Plaintiff's argument would eviscerate the independent contractor exception and the holding of *Logue*, which considered and rejected an argument expressed in terms of a non-delegable duty that the government allegedly owed to a prisoner. Accordingly, Plaintiff may not skirt the [contractor exception] by claiming that [the United States] owed him a non-delegable duty.

*Tyson v. United States*, No. 06-14465, 2007 U.S. Dist. LEXIS 46099, at *9-10 (E.D. Mich. June 26, 2007) (citing *Logue*, 412 U.S. at 528 n.7). We reach the same conclusion here.

Other circuits have similarly held that the FTCA's contractor exception, as interpreted by the Supreme Court in *Logue*, precludes FTCA claims for contractor negligence based on a state-law nondelegable duty of care. *See Alinsky v. United States*, 415 F.3d 639, 645 (7th Cir. 2005); *Roditis v. United States*, 122 F.3d 108, 111 (2d Cir. 1997); *Norman v. United States*, 111 F.3d 356, 358 (3d Cir. 1997); *Berkman v. United States*, 957 F.2d 108, 113 (4th Cir. 1992). *But see Dickerson, Inc. v. United States*,

875 F.2d 1577, 1582-84 (11th Cir. 1989).[1]  There is accordingly no basis for FTCA liability for TECOM's failure to warn.

To be sure, the contractor exception might not apply if the negligence of a government employee, rather than that of a contractor, forms the basis for liability. Although the contractor exception shields the government from liability for the actions of its contractors, it does not shield the government from liability for the government's own negligent acts.  *See Logue,* 412 U.S. at 532-33.  In *Angel v. United States*, 775 F.2d 132 (6th Cir. 1985), we held that although "the government is not an insurer and is not liable for the negligence of its independent contractor, it is liable for its own negligence." *Id.* at 140.

Nonetheless, to the extent that Berrien's failure-to-warn claim asserts that the Army negligently failed to warn Berrien, the claim fails whether conceptualized as negligence in failing to warn of a known danger or as negligence in failing to discover a danger.   Under Michigan premises liability law, the owner or possessor of the premises, in this case the United States, is subject to liability for an invitee's physical injuries that are caused by a dangerous condition "if, but only if, [the possessor of land] . . . knows or by the exercise of reasonable care would discover the condition . . . ." *Bertrand v. Alan Ford, Inc.*, 537 N.W.2d 185, 186 (Mich. 1995) (quoting *Restatement* (second) *of Torts* § 343 (1965)).  Although "invitors may be held liable for an invitee's injuries that result from a failure to warn of a hazardous condition," *id.*, invitors "are not absolute insurers of the safety of their invitees," *id.* at 188.  Although "a premises owner's duty to warn extends to hidden or latent defects," *Riddle v. McLouth Steel Prods. Corp.*, 485 N.W.2d 676, 679 (Mich. 1992), Michigan law does not require premises owners to provide a warning about hidden dangers that are neither known to the owner nor reasonably discoverable by the owner. *See Bertrand*, 537 N.W.2d at 188.

---

[1]In *Dickerson*, the Eleventh Circuit reaffirmed Fifth Circuit precedent holding that "although the United States is not liable under the FTCA for the negligence of an independent contractor, it may be liable, just as any private citizen would be, under an applicable state tort theory for *its own* negligence in failing to prevent harm to third parties when the activity contracted for was inherently dangerous or when the Government was aware that the contractor had created a dangerous situation."  875 F.2d at 1582 (emphasis added).

First, there is no basis for the court to have concluded that the Army knew of the danger from the liquor store gutter, and such a conclusion would therefore be clearly erroneous. *See* Fed. R. Civ. P. 52(a). In fairness, it is not clear that the district court did come to such a conclusion. The district court found that the United States "had ample time to become aware" of the gutter defect because it had possession of the Class VI store's blueprints, which indicated the store's noncompliance. Having time is not the same as actually being aware. The district court found "constructive notice" but did not otherwise explicitly find that the Army had actual knowledge of the gutter defect.

Instead, the district court effectively found that the Army, in the exercise of reasonable care, should have found out about the dangerous condition. Under Michigan law's reasonableness standard for what a landowner should know, however, it was clearly erroneous for the district court to infer that the *Army,* which had contracted out its safety responsibilities, should have known about a dangerous condition when that condition was so hidden that it could not have been discovered without dismantling part of the constructed building. Although Berrien argues that part of the dangerous condition—the absence of gutter straps—was visible to the naked eye, it is clear that the internal construction defects, including the use of substandard materials and improper flashing techniques, created the dangerous condition and that those defects were not discoverable through visual inspection.[2] No reasonable inspection could have led the Army to discover this dangerous condition. To impose liability for injuries that arise out of essentially undiscoverable defects suggests that premises owners are strictly liable even when they have acted reasonably, a position that Michigan law rejects. As the Michigan Court of Appeals reasoned in *Hampton v. Waste Management of Michigan, Inc.*, 601 N.W.2d 172 (Mich. Ct. App. 1999), regarding a slip on an oily space:

> Nevertheless, even if we presume that the substance did so leak from the dumpster, there is no indication that Northwest Market or any of its

---

[2]While Berrien argues that the absence of gutter straps was one of main reasons that the gutter fell, and the district court found that the "gutter also fell because there were no gutter straps," *Berrien*, 2012 U.S. Dist. LEXIS 4251, at *8, both parties' experts agreed that there are multiple acceptable ways to install and fasten a gutter, some of which do not include the use of external gutter straps. In other words, the lack of gutter straps did not, without more, create a dangerous condition that the United States, as premises owner, should have discovered in the exercise of reasonable care.

employees had any knowledge of material ever leaking from the
dumpster in the past. Thus, there was no evidence presented to
reasonably support a finding that either Northwest Market or any of its
employees should have anticipated that any material placed in the
dumpster would leak from it. Also, there was no evidence that Northwest
Market or any of its employees knew or should have known of the
alleged presence of the oily substance during the time that Hampton was
working in and near its parking lot before or at the time of his fall. Thus,
we conclude that the trial court properly granted summary disposition in
favor of Northwest Market pursuant to MCR 2.116(C)(10) because there
was no evidence of an unreasonable act or omission by Northwest
Market or any [of] its employees that was a proximate cause of
Hampton's accident or that Northwest Market had actual or constructive
notice of the alleged leak from the dumpster.

*Id.* at 176-77 (internal citation omitted). Similarly here, it would be clearly erroneous
to find that the Army should have known that the construction of the gutter was
defective.

Finally, it could be argued that the Army was negligent in limiting its safety
activities regarding the liquor store to spot checks. However, even assuming this
argument is preserved and otherwise meritorious, it founders on the discretionary
function exception to FTCA liability. That exception precludes:

Any claim based upon an act or omission of an employee of the
Government, exercising due care, in the execution of a statute or
regulation, whether or not such statute or regulation be valid, or based
upon the exercise or performance or the failure to exercise or perform a
discretionary function or duty on the part of a federal agency or an
employee of the Government, whether or not the discretion involved be
abused.

28 U.S.C. § 2680(a). Both the decision to hire a contractor and the decision to spot
check for safety compliance fall squarely within this exception. Under the Supreme
Court's two-pronged test in *United States v. Gaubert*, 499 U.S. 315 (1991), these
decisions were both (1) "discretionary" rather than "controlled by mandatory statutes or
regulations," *id.* at 328, and (2) "grounded in social, economic, and political policy," *id.*
at 323. An FTCA claim that the government negligently failed to discover a latent
defect after it properly delegated its inspection duties would essentially be a challenge

to the government's decision to delegate its inspection duties; this is precisely the type of challenge that is precluded by the discretionary function exception.

We held similarly in *Totten v. United States*, 806 F.2d 698 (6th Cir. 1986). In that case, the plaintiff brought an FTCA claim alleging that the government negligently failed to provide for safety inspections at an Air Force facility, where the Air Force had contracted with a private company to provide for safety inspections and day-to-day supervision. We held that the discretionary function exception was "applicable to alleged negligence in the delegation of safety responsibilities to a government contractor." *Id.* at 701. Similarly, in *Feyers v. United States*, 749 F.2d 1222 (6th Cir. 1984), the plaintiff alleged that the government negligently failed to inspect and provide safety training at a railyard, where the government had delegated those duties to Chrysler but retained a spot-check right. We held:

> The United States' decisions to delegate safety responsibility to Chrysler, to conduct only "spot checks" of Chrysler's safety programs, and to not institute a safety training program for railyard workers are clearly the type of discretionary functions protected by 28 U.S.C. § 2680(a). . . . The decision to rely on the "spot checks" or annual review along with accident rates to establish safety priorities is, in essence, a policy decision, involving the exercise of discretion. . . . Further, the decision to delegate responsibility for safety to Chrysler was based on a perception by government negotiators that Chrysler was a prudent contractor capable of implementing its own safety program.

*Id.* at 1227. Even though the United States retained the right to conduct spot checks under its contract with TECOM, this right does not subject it to FTCA liability.

The judgment of the district court is reversed.